BENEDICT COLAVECCHIO *vs.* ALFRED MARSELLO *et al.*

DECEMBER 8, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an action of assumpsit for breach of an oral contract. The plaintiff was adjudged nonsuit on the

motion of the defendants in the superior court. He is here on his bill of exceptions, containing an exception to the decision of the trial justice on that motion and three other exceptions to rulings excluding certain evidence.

There is evidence in the transcript that the facts were as follows. The defendants, Alfred Marsello and Albert Marsello, are brothers. At the time the alleged contract was made they were respectively secretary-treasurer and president of the Imperial Pearl Company, a Rhode Island corporation, hereinafter referred to as the company. The capital stock of the company was owned by Alfred. Both of the defendants participated in the negotiations with the plaintiff, but Alfred was the principal negotiator.

In February 1935, the company was indebted to the plaintiff in the sum of $3837.99 when it became involved in serious financial difficulty. Plaintiff was informed of this latter fact by the defendants on February 10, 1935 in an interview with them at the office of the company in Providence. The plaintiff was told that there was a possibility that the company could be reorganized under section 77-B of the national bankruptcy act, and they requested his cooperation to that end as the company's largest unsecured creditor. In reply to this request, plaintiff said that he could not afford to lose the amount of the company's debt to him, as it would ruin him financially if he did. Defendants, however, protested that he would not lose anything, as they personally promised to pay him the difference between the amount of the company's debt to him and the amount of the dividend which he would receive as a creditor under the reorganization plan. Both defendants assured the plaintiff that they had personal resources out of which they could pay him in accordance with such promise.

Plaintiff, being doubtful of the defendants' financial responsibility, did not at that time accede to their request but

suggested that he be given time to consider the offer. This was done and another interview was arranged for the next day, February 11, 1935. On that day defendant Alfred Marsello appeared alone, but apparently with the authority to speak for his brother also, and again he discussed the matter with the plaintiff, who was still doubtful of defendants' financial responsibility and asked at this time where they were to get the money to keep their promises individually to him. In reply Alfred said that he was going out that very day to see some personal friends who would assist him. He then left and said he would return within a few hours. Plaintiff, however, did not see him again until the night of February 13, 1935, at which time plaintiff finally agreed not to sue the company and to join in the reorganization plan.

The company had already filed its petition for reorganization under section 77-B sometime during the day of February 13, 1935. Later a sufficient number of the company's creditors, including the plaintiff, having agreed to the reorganization plan, the company was reorganized and saved from bankruptcy. Under the plan creditors received 25% of their claims and the plaintiff accordingly obtained thereby the sum of $959.49. Thereafter he demanded from the defendants the difference between this amount and the amount of his claim, namely, $2878.50. They did not deny they owed him the money but rather they unequivocally admitted it. However, after several fruitless demands for payment from 1935 until October 1937, plaintiff finally decided to bring the present action to enforce collection of the debt, which he deemed the defendants personally owed him.

The defendants moved for a nonsuit on the grounds that the alleged promises were unenforceable under the statute of frauds, that they lacked consideration, and would, if performed, constitute an illegal preference under the national bankruptcy act. They waived the first ground in

argument in this court. The trial justice does not appear to have considered any of those grounds in deciding the motion. It appears to us, after a careful consideration of what he said in giving his decision on the motion and also in making his rulings on the exclusion of certain evidence of the plaintiff, that he found there was no evidence of any promise on the part of the bankrupt, meaning the debtor company, after the filing of its petition for reorganization on February 13, 1935, and that, therefore, there was nothing for the jury to consider. Such decision is consistent with rulings which he made during the trial excluding certain evidence, but it is predicated upon a misconception of the theory of the plaintiff's case and the issue raised by the pleadings and the evidence.

The transcript clearly discloses that the trial justice was laboring under the mistaken view that the plaintiff's case was based upon an alleged promise of the debtor company to revive a debt which had been discharged by bankruptcy, whereas in reality it was based upon the alleged promises of the defendants individually to pay the plaintiff out of their own personal resources. In accordance with such mistaken view of the case, the trial justice ruled several times during the trial, and at each time over the plaintiff's objection, that the evidence of the alleged promises before February 13, 1935, the date of the filing of the petition for reorganization, was irrelevant, as the discharge in bankruptcy had "washed out" everything prior to that date.

The plaintiff took exception to each of those rulings and he has urged those exceptions here, both in his brief and argument. At the trial his counsel attempted to clarify the evident confusion in the mind of the trial justice relative to the issue on trial, but his efforts were unavailing, as is well illustrated by the following remarks of the trial justice, appearing on page 21 of the transcript: "Now the question is, did they make a new promise after they went into bank-

ruptcy? If they did, all right. If they didn't, it is all out." Later, while engaged in a colloquy with counsel just before deciding defendants' motion for a nonsuit, he indicated quite clearly that such was still his understanding of the issue in the case; and very logically, on that view, he granted defendants' motion.

This attitude of the trial justice deprived the plaintiff of a fair trial. It resulted not only in error in each ruling on the exclusion of evidence, excepted to by the plaintiff, but necessarily also in the final decision on the motion for a nonsuit. Under these circumstances, we cannot, in justice to the plaintiff, pass upon the questions of enforceability of the alleged promises of the defendants until the plaintiff is afforded an opportunity, in a new trial, to fully present his case on the issue raised by the pleadings. At that time it may be that the evidence will be such as to present not a question of law for the court, relative to the enforceability of those alleged promises, but a question of fact for the jury. In any event, we express no opinion at this time on the questions of law raised by the defendants' contentions in support of their motion for a nonsuit.

For the reasons stated, all of the plaintiff's exceptions are sustained, and the case is remitted to the superior court for a new trial.

*Vincent P. Colavecchio,* for plaintiff.

*Florie De Simone, Albert R. Tavani,* for defendant.